**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID A. LESH,** | : | **Civil No.  3:23-CV-1584** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Wilson)** |
| **v.** | : | |
| | : | |
| **MARTIN O'MALLEY,** [1] | : | **(Magistrate Judge Carlson)** |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

## I.    Introduction

In this case, we do not write upon a blank slate. Indeed, the plaintiff, David Lesh's, Social Security appeal involves a narrow set of facts, and an even narrower timeframe, yet has been litigated for nearly a decade. Two different Administrative Law Judges (ALJ), in three separate administrative decisions, have evaluated virtually the same medical evidence and a variety of medical opinions regarding the disabling effects of Lesh's severe impairments of lumbar spine disorder, obesity, and bilateral tarsal tunnel syndrome (TTS), and, while each decision determined Lesh

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this suit.

1

had not met the demanding showing necessary to sustain his claim for benefits, they diverged in their determination of a key portion of the disability analysis, Lesh's residual functional capacity. On this score, the initial decision denying Lesh's application for benefits in 2018 found he was only capable of sedentary work, limiting him to occupations which can be performed with the use of a cane for ambulation, as needed. Yet the subsequent two decisions evaluating the limiting effects of the same severe impairments, during a truncated but completely overlapping temporal period, found Lesh capable of light work with no mention of an assistive device for ambulation.

As explained below, while we acknowledge an ALJ reviewing a case *de novo* is not bound by the RFC determinations of a prior administrative decision, this case calls upon us to consider longstanding principles regarding the duty of an ALJ to fully articulate the basis of a residual functional capacity (RFC) assessment, particularly in a case such as this one, where an ALJ initially found the plaintiff limited to sedentary work, then on remand four years later, when evaluating a disability period which encompassed the same, albeit truncated, timeframe, found Lesh could perform a range of light work. The latest decision, which is the subject of the instant appeal, necessarily implies that the first ALJ decision overestimated the extent of Lesh's functional limitations, yet we are not provided with a fully

articulated explanation for the ALJ's rejection of this significantly more restrictive original RFC. In fact, following the remand of the original decision, the record is devoid of any mention of this original sedentary RFC. On these facts, a remand is warranted. Accordingly, for the reasons discussed below, we recommend that the district court remand this case for further consideration by the Commissioner.

## II.    **Statement of Facts and of the Case**

The unfavorable decision the plaintiff challenges in this appeal is the third decision issued by two different ALJs since the plaintiff, David Lesh filed a claim for Title II Social Security Disability benefits on April 1, 2016. Lesh's initial application alleged that he was totally disabled as of October 9, 2011, due to a host of impairments, including spinal fusion, herniated lumbar disc, limited mobility, chronic pain, GERD, hyperlipidemia, and hypertension. (Tr. 106). He was 49 years old on the date last insured, had a high school education, and had past work as an appliance repair person. (Tr. 1046).

The objective medical evidence considered by the ALJs in this case was aptly summarized by the ALJ in this most recent decision:

> By way of history, the claimant underwent a left L5-S1 microdiscectomy and foraminotomy for the diagnosis of a herniated nucleus pulpous at L5-S1, left leg pain, left lumbar sacral radiculopathy, and back pain, leg pain, and leg weakness on January 16, 2012 (Exhibit 1F/7). However, after a brief resolution of symptoms,

the claimant remained symptomatic and underwent an additional, minimally invasive posterior spinal instrumentation and fusion at the L5-S1 level on June 19, 2012 (Exhibits 2F, 3F/2-7, 4F/1-4). Thereafter, the claimant reported "doing great" and doing "lots of walking" at a two-week post-operative appointment in July 2012 (Exhibit 4F/5). Physical examination at that time noted a minimally antalgic gait, with normal motor and sensory findings, as well as no pain or restriction with rotation of either hip, and that the claimant was not in acute distress (Exhibit 4F/5). Post-surgical x-ray imaging from July 2012 through April 2015 showed no evidence of hardware loosening or failure and described excellent positioning of the hardware (Exhibits 4F/5, 7, 9, 11, 16, 18, 20, 22, 25-28, 31-34). Further, a bilateral EMG/NCS study from January 2013 was positive for findings compatible with bilateral posterior tarsal tunnel syndrome involving the medial plantar branches but noted no evidence of involvement of the lateral plantar branch or evidence of anterior tarsal tunnel syndrome (Exhibits 4F/15, 38-40, 17F/10-11). Moreover, an MRI in November 2012 indicated that there was no recurrent herniated disc, no evidence of any significant stenosis, but did note degenerative and postsurgical changes at the L5-S1 level with enhancing left paracentral and foraminal granulation tissue or scar, mild central spinal canal stenosis, and mild to moderate bilateral foraminal stenosis at the L3-L4 and L4-L5 levels (Exhibits 4F/13, 29,).

There is only one orthopedic visit during the period at issue, from February 26, 2014, which is shortly after the amended alleged onset date (Exhibit 4F/18). The note from that visit indicated that the claimant had not been seen in their office since September 2014 and was approximately twenty-one month's status post L5-S1 lumbar spine fusion. In between seeing his doctor in September 2013 and February 2014, the record reflected that the claimant underwent physical therapy, which helped significantly, and that he had been treating with a chiropractor, which helped with his back, hip, and groin pain. It was also noted that the claimant was not taking any medication, reported only occasional back, left hip, groin, and bilateral feet and ankle pain, and that the reason for his presentation was to have his work restrictions reevaluated. Physical examination at that time was positive for mild

4

pain with end range of internal rotation that seemed to be slightly more restricted in the left hip when compared to the right, decreased sensation over the bilateral dorsal aspects of the feet and lateral aspects of the ankles, and hyperreflexic but symmetric reflexes. That said, the examination also noted that he was not in acute distress; he had a non-antalgic gait; he had full range of motion of his lumbar spine; that there was no significant tenderness to palpation of the lumbar spine; that plantar sensation was intact and normal; that he had 5/5 b motor strength throughout, and that he had a negative straight leg raise test (Exhibit 4F/18).

The next treatment record during the time at issue was when the claimant presented to the office of Dr. Steven M. Deluca, for complaints of acute onset of back pain shortly after the date last insured on April 3, 2014 (4F/20). Physical examination at that time was positive for mild hypertonicity over the paraspinals, right, greater than the left; decreased plantar lateral sensation over the left foot and ankle; discomfort with forward flexion to about 40 degrees, and extension 20 degrees; some mild back pain with bilateral straight leg raise testing; and a positive Tinel's sign over the left tarsal tunnel. That said, he was also noted to not be in acute distress with his lumbar lordosis maintained; to have no tenderness to percussion or palpation along the midline; to heel and toe walk without difficulty; and to have 5/5 motor strength (Exhibit 4F/20). As such, the claimant was diagnosed with an acute right-sided lumbar strain and advised that everything looked fine in regards to his surgery and that he was going to occasionally have these types of problems (Exhibits 4F/20-21). It was further noted that the claimant might have a component of tarsal tunnel syndrome, but that it was not bad enough at that time to warrant any additional treatment (Exhibit 4F/21). Shortly thereafter, an EMG/NCS was performed on April 18, 2014 by the claimant's chiropractor, which was positive for findings consistent with chronic right S1 radiculopathy without evidence of peripheral neuropathy (Exhibits 7F/58-59). Subsequently, a treatment record from August 2014 noted that the claimant reported lifting weights on a daily basis (6F/25).

5

Thereafter, the claimant was not seen by Dr. Deluca's office until approximately one year later on April 16, 2015, at which time he reported an acute onset of low back pain that occurred when he was changing the tire on his motorcycle a few months prior. Since that time, he reported nonradicular back pain, with no paresthesia or dysesthesia (Exhibit 4F/22). Objective examination findings noted that while he had mild tenderness and hypertonicity over his lumbosacral region, he was able to forward flex to 80 degrees, and extend to 15 degrees without much discomfort. Also, he was able to heel and toe raise without difficulty; there was no pain or restriction with rotation of either hip; motor strength was 5/5 throughout; sensation was intact; straight leg raise testing and Trendelenburg sign were negative; and he was not in acute distress. Moreover, lumbar x-rays reflected the L5-S1 lumbar spine instrumented fusion with hardware in excellent position and alignment. The x-ray also noted no evidence of hardware loosening or failure, no evidence of narrowing, spondylosis or spondylolisthesis, and no fractures. In addition it noted that the claimant's spine maintains a less than 10-degree right-sided lumbar scoliotic curve which has been stable (Exhibits 4F/22, 24). Two months after seeing Dr. Deluca's office, the claimant saw his primary care physician for a commercial drivers license examination. His examination at that time noted he was walking with a normal gait, he had full range of motion of his spine, with no tenderness to palpation, and no instability or joint restrictions. Also, his strength was noted as 5/5 bilaterally in his upper and lower extremities, and he had normal muscle tone. Accordingly, it was determined that while he had a lumbar fusion it did not interfere with his functional abilities, and he was able to operate a commercial motor vehicle (Exhibits 6F/30-32). Thereafter, an EMG/NCS performed in December of 2015 by the claimant's chiropractor, noted findings consistent with chronic right S1 radiculopathy, with no evidence of peripheral neuropathy (Exhibit 7F/6-7).

(Tr. 1039-41). The ALJ also acknowledged that the record reflected Lesh had a BMI of 33 during the relevant period which is in the range that indicates obesity. (Tr. 1041).

6

Lesh's claim was denied initially in May 2016 and was heard by ALJ Timothy Wing at a hearing on February 21, 2018, (Tr. 29-71), who issued an unfavorable decision dated August 8, 2018. (Tr. 12-28). In that decision, ALJ Wing evaluated a closed period of disability from the alleged onset date of October 9, 2011, through Lesh's date last insured of March 31, 2014. (Tr. 17). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Lesh suffered from the following severe impairments: lumbar spine disorder, including a herniated nucleus pulposus and radiculopathy status-post two surgeries, obesity, and bilateral tarsal tunnel syndrome (TTS). (Id.) At Step 3, the ALJ determined that Lesh did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 18).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), considering Lesh's limitations from his impairments:

> After careful consideration of the entire record, the undersigned finds that through the date last insured, *the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he is limited to occupations which can be performed with the use of a cane for ambulation, as needed.* He is further limited to occupations that require no more than occasional postural maneuvers such as balancing, stooping, kneeling, crawling, crouching, and climbing on ramps and stairs, but most [sic] avoid occupations that require climbing on ladders, ropes, or scaffolds. He must be afforded the option to alternate between sitting and standing during the work day for brief periods of a few minutes every one-half hour or so, but can

7

remain on task during this time. He must avoid concentrated and prolonged exposure to environments with temperature extremes, excessive vibration, extreme dampness, and humidity.

(Tr. 18) (emphasis added).

In reaching this conclusion, ALJ Wing considered Lesh's function report in which he alleged difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, and completing tasks and stated he can walk for up to fifteen minutes at one time but needs to take frequent breaks and can stand for less than five minutes and has to change position every ten to fifteen minutes. (Tr. 19). The ALJ also considered Lesh's testimony that he used a cane periodically since his initial surgery and that he has pain when twisting and standing still and can lift no more than ten pounds. (Id.)

ALJ Wing found Lesh's statements about the limiting effects of his impairments were not entirely consistent with the objective medical evidence. The ALJ summarized the longitudinal medical evidence and considered the opinions of five medical experts, two of whom opined Lesh was capable of sedentary work and three finding him capable of work at the light to medium exertional level. ALJ Wing gave great weight to the opinion of Lesh's treating orthopedist, Dr. DeLuca, indicating he could work at a sedentary level with increased abilities over time, as it was consistent with the evidence of record. (Tr. 20). ALJ Wing also gave great

weight to the April 2018 medical source opinion of Dr. Arthur Lebowitz who opined that Lesh was at least capable of sedentary work but could only occasionally reach overhead and frequently reach, did not need a cane for ambulation but needed to change position every 20 minutes. (Id.) The ALJ gave the February 2014 opinion of Dr. Skocik, limiting Lesh to medium work, some weight to the extent it was consistent with the RFC, and gave the January 2013 opinion of Dr. Wolk, placing Lesh in the light exertional level with the ability to change position hourly and eventually improving to the medium exertion level, significant, but not great weight. (Tr. 21). He also considered October 2014 opinion of Dr. Starenfeld, limiting Lesh to the medium exertional level, giving it little weight because it did not reflect Lesh's functional capacity during the relevant period. (Id.)

In finding Lesh limited to sedentary work during the relevant period, ALJ Wing summarized:

> In sum, the above residual functional capacity assessment is supported by the totality of the evidence. The claimant has a significant medical history with multiple surgeries and ongoing issues with pain. However, the record shows that, at his worst, the claimant was still able to perform work at the sedentary exertional level with appropriate additional limitations. Moreover, the evidence shows that the claimant improved following surgery to the point where he had stopped taking medication and requested a release to work at the medium or heavy exertional level shortly before the date last insured, while he reported after the date last insured that he was lifting weights for exercise. (Ex. 6F). Considering the evidence of record as compared to the claimant's allegations, the

undersigned finds that the claimant is capable of working within the
residual functional capacity described above.

(Tr. 21). The ALJ then found that, through the date last insured, Lesh was capable

of performing his past relevant work as a sales representative as actually performed.

(Tr. 22). Having reached these conclusions, the ALJ determined that Lesh had not

met the demanding showing necessary to sustain his claim for benefits and denied

his claim. (Id.)

Lesh appealed this first decision, and on September 11, 2020, the district court

remanded the case for further consideration, finding that the ALJ did not properly

articulate its treatment of the opinion of Dr. Lebowitz. (Tr. 1154-1166). Specifically,

the district court found that the ALJ did not explain the reasons for failing to include

Dr. Lebowitz's limitation which found Lesh could occasionally reach overhead or

his limitation for working with his arms above shoulder level despite giving his

opinion great weight. (Tr. 1154). The district court held that, without any medical

opinion being credited with regard to all of the plaintiff's limitations, the ALJ

impermissibly relied on speculation or lay interpretation of the evidence to reach his

conclusion. (Id.)

Following the decision of the district court, Lesh's case was remanded back

to ALJ Wing who held another hearing on July 7, 2021. (Tr. 1078-1126). At the

10

remand hearing, the alleged onset date of Lesh's disability was amended to February 24, 2014. (Tr. 1080). Thus, following the July 2021 hearing, the ALJ was considering a disability period encompassing little more than one month, from February 24, 2014, through March 31, 2014. However, this period was completely encompassed within the original period of disability during which the ALJ had previously limited Lesh to sedentary work with occasional use of a cane. Another independent medical examiner, Dr. Todd, testified at the July 2021 hearing that Lesh could perform all light duty but not medium or heavy duty work and that he did not require the use of a cane for ambulation. (Tr. 1098-1114).

Following the remand hearing, ALJ Wing issued a second unfavorable decision, finding that, during the amended disability period encompassing February 24, 2014, through March 31, 2014, Lesh had the same severe impairments of lumbar spine disorder, including a herniated nucleus pulposus and radiculopathy status-post two surgeries, obesity, and bilateral tarsal tunnel syndrome, but now finding Lesh had the residual functional capacity to perform light work. Specifically, the ALJ found:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he is limited to occupations which require no more

than frequent postural maneuvers, such as balancing, crouching, and climbing on ramps and stairs; occasional stooping; but must avoid occupations that require climbing on ladders, ropes, and scaffolds or crawling. The claimant is limited to occupations that require no more than occasional overhead reaching, but may frequently handle, finger, feel, and push/pull with the upper extremities. The claimant may frequently operate foot controls bilaterally. The claimant must avoid concentrated prolonged exposure to environments with temperature extremes, excessive vibration, extreme dampness, and humidity.

(Tr. 1182-83).

In developing this RFC, ALJ Wing gave great weight to the opinion of the independent medical examiner who testified at Lesh's hearing, Dr. Todd, who found that Lesh could perform light work, including sitting, standing, and walking for six hours in an eight-hour workday, that a cane is not medically required, that he had no limitation in the use of his upper extremities or foot controls but that he should not crawl or stoop. (Tr. 1188-90). He again considered the opinion of Dr. Lebowitz, which had initially been given great weight, but gave the opinion little weight, stating that the evidence did not support the degree of limitations contained in the opinion. (Tr. 1188), and the opinions of treating orthopedist Dr. Deluca, the 2013 opinion of Dr. Wolk and the 2014 opinion of Dr. Starenfeld, giving them overall limited weight. (Tr. 1186-90). The ALJ also considered the opinions of Dr. Dominique, Dr. Potter, and Dr. Goldstein, which had not previously been

considered, but afforded them no weight. (Id.) Based on this RFC, ALJ Wing found Lesh was capable of performing his past relevant work as an appliance repair person and was not under a disability between February 24, 2014, and March 31, 2014. (Tr. 1192). Curiously, the ALJ's decision was silent with respect to his prior administrative finding that Lesh was limited to sedentary work and did not include any provision for his use of a cane.

Lesh then appealed this second unfavorable decision by ALJ Wing, and the appeals council remanded, finding again that the ALJ had failed to properly evaluate the opinion of a medical expert, this time Dr. Todd. (Tr. 1201). The appeals council found that the ALJ failed to explain why he found the plaintiff had the ability to occasionally stoop, despite giving great weight to the opinion of Dr. Todd, who opined that Lesh should avoid crawling or stooping. (Id.)

It was against this lengthy administrative backdrop that a second remand hearing was held on October 19, 2022, this time before a different ALJ, ALJ Dominick, at which a vocational expert testified to further develop the issue of whether Lesh could stoop. (Tr. 1058-76).

Following this hearing, on December 1, 2022, ALJ Dominick issued a third decision denying Lesh's application for benefits. (Tr. 1028-1056). In that decision, the ALJ again concluded that Lesh last met the insured status requirements of the

13

Act on March 31, 2014, and he had not engaged in substantial gainful activity during the period from his amended alleged onset date of February 24, 2014, through his date last insured of March 31, 2014. (Tr. 1033-34). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Lesh suffered from the same severe impairments of lumbar spine disorder, including a herniated nucleus pulposus and radiculopathy status-post surgeries, obesity, and bilateral tarsal tunnel syndrome. (Tr. 1034). At Step 3, the ALJ again determined that Lesh did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 1034-35).

Between Steps 3 and 4, ALJ Dominick fashioned a third residual functional capacity ("RFC") in Lesh's case, finding:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations:
>
> The claimant is limited to no more than occasional stooping, kneeling, crouching, and climbing on ramps and stairs, but may never crawl or climb on ladders, ropes, or scaffolds. Further, the claimant must avoid unprotected heights and dangerous moving machinery. Also, the claimant is limited to occupations that require no more than occasional overhead reaching, but he may frequently handle, finger, feel, and push/pull with upper extremities. Moreover, the claimant is limited to no more than frequent operation of foot controls. Lastly, the claimant must avoid prolonged exposure to temperature extremes, excessive vibration, extreme dampness, and extreme humidity.

14

(Tr. 1036).

In reaching this conclusion, the ALJ stated that he considered all Lesh's symptoms, including his function report stating he had limited mobility from his impairments and that they affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and complete tasks, and that his medication caused dizziness. (Tr. 1037). The ALJ also considered Lesh's July 2022 testimony that, during the relevant period, he was unable to work full-time because he was constantly switching positions and had limited movement which caused him great pain. The ALJ further summarized Lesh's testimony that he could not lift more than ten pounds while standing, could only drive for fifteen minutes and had limited ability to do chores but that he continued to periodically ride his motorcycle, (Tr. 1037-38), and considered the July 2022 hearing testimony of independent medical examiner Dr. Todd, who testified that Lesh could perform a limited range of light work and that a cane was not medically required. (Tr. 1038). The ALJ cast this testimony against the medical record and summarized:

> Overall, the longitudinal evidence of record for the brief period at issue, did not support the claimant's allegations concerning the intensity, persistence, and limiting effects of his symptoms. Here, while the claimant has a history of two prior lumbar surgeries, and treatment thereafter with a chiropractor, physical therapist, family physician and surgeon, the positive findings on physical examination were not

15

particularly adverse in that they did not support any greater limitations.
Notably, while the claimant's mild pain with range of motion of his
hips; mild hypertonicity of the paraspinals; decreased sensation in his
feet; hyperreflex but symmetric reflexes; discomfort with flexion and
extension, mild positive straight leg raise bilaterally, and positive
Tinel's test supported limiting the claimant to light work with the ability
to occasionally stoop, kneel, crouch, and climb on ramps and stairs, but
never crawling or climbing on ladders, ropes or scaffolds, as well as
avoidance of unprotected heights and dangerous moving machinery,
and no prolonged exposure to temperature extremes, excessive
vibration, extreme dampness and humidity, they did not support greater
limitations. Also, while the claimant's history of a spinal fusion,
supports the limitation of no more than occasional overhead reaching,
with the ability to frequently handle, finger, feel, push, and pull with
the upper extremities, post-surgical imagining from July 2012 through
April 2015 showed no evidence of hardware loosening or failure, and
the lumbar MRIs from November 2012 and 2017 supporting any
greater limitations. Further, while the bilateral EMG/NCS from January
2013 noted bilateral tarsal tunnel syndrome involving the medial
plantar branches, it also noted no involvement of the lateral plantar
branch and no evidence of anterior tarsal tunnel syndrome. Moreover,
the record reflects that as of May of 2017, the claimant had not needed
any surgical intervention relative to the tarsal tunnel syndrome. Also,
the EMG/NCS from 2013, 204 and 2015 of the lower extremity showed
no change in the lumbar radiculopathy. Thus, while the frequent
operation of foot controls is supported, the record does not support
greater limitations (Exhibits 4F/13, 15, 29, 38-40, 15F/27, 30, 17F/10-
11). Furthermore, while Dr. Todd testified that the claimant should not
stoop, he also stated that the claimant was able to bend forward to
eighty degrees without difficulty and noted that the maximum ability
for any individual to bend forward is ninety degrees (Hearing Record
7/7/21). Thus, the occasional stooping limitation is supported. Also
supporting that the claimant is capable of occasional stooping is the fact
that he had no lumbar tenderness on physical examination, had
consistently normal strength, had a nonantalgic gait, and there was no
noted atrophy, edema, cyanosis, or clubbing during the relevant time.
In addition, the claimant's own activities during the time at issue

16

> support he was able to occasionally stoop, specifically riding a motorcycle, traveling the country with his wife for her work, as well as his walking, lifting weights, and being approved for a commercial driver's license. While the undersigned acknowledges that the claimant had some limitations performing these activities, and while none of these activities is dispositive, taken together and considered in conjunction with the above medical evidence of record, they suggest that the claimant was able to perform work within the above parameters on a sustained and continuous basis.

(Tr. 1041).

The ALJ then considered the medical opinion evidence, first giving the opinion of Dr. Todd partial weight, finding his opinion that Lesh was capable of light work consistent with the longitudinal record, but explaining that his limitation to no stooping was not supported by the record for the above summarized reasons. (Tr. 1042-43). The ALJ also found the record of Lesh's radiculopathy, obesity, and tarsal tunnel syndrome supported more restrictive environmental limitations than recommended by Dr. Todd. (Id.)

The ALJ also considered the April 2018 opinion of Dr. Lebowitz and gave it partial weight, finding that his opinion that Lesh did not meet or equal a listing was consistent with and supported by the longitudinal evidence, but that the standing and walking limitations reducing Lesh to sedentary work were not consistent with the evidence and the environmental limitations were not sufficient to adequately protect the claimant. (Tr 1043-44).

The ALJ gave the February 2014 opinion of PA-C McCluskey and the October 2014 opinion of Dr. Starenfeld little weight, finding that these opinions were not consistent with the longitudinal record or supported by the evidence. (Tr. 1044-45). The ALJ also noted that he considered the opinions of Dr. Wolk, Dr. DeLuca, Dr. Dominique, Dr. Potter, and Dr. Goldstein, but did not give them weight because they opined on a timeframe outside the disability period at issue. (Tr. 1045-46).

The ALJ then found that Lesh could not perform his past work as an appliance repair person, based upon the most recent hearing testimony of the vocational expert, but retained the capacity to perform other jobs that existed in significant numbers in the national economy. (Tr. 1046-47). Having reached these conclusions, the ALJ determined that Lesh had not met the demanding showing necessary to sustain his claim for benefits and denied his claim. (Tr. 1046). Notably, this ALJ also did not mention the prior administrative finding limiting Lesh to sedentary work in occupations that allowed for the use of a cane.

This appeal followed. (Doc. 1). On appeal, Lesh challenges the adequacy of the ALJ's explanation of this RFC determination, arguing, among other things that the ALJ failed to explain the inconsistencies between the ALJ's findings in this case

and the original unfavorable decision which limited Lesh to sedentary work.[2] As we have recognized, the original 2018 unfavorable decision limited Lesh to sedentary work in occupations which can be performed with the use of a cane for ambulation between the original onset date, October 9, 2011, through the date last insured March 14, 2014. This latest ALJ decision then found that Lesh was able to perform work at the light exertional level from the amended onset date of February 24, 2014, through the same date last insured, March 14, 2014, without any discussion or consideration of the prior, overlapping, sedentary RFC.

Given the ALJ's failure to address, explain or even acknowledge this inconsistency, in our view, more is needed here, and we conclude that the ALJ's burden of articulation has not been met in this case. Accordingly, we recommend this case be remanded for further consideration by the Commissioner.

---

[2] The plaintiff also alleges that the ALJ failed to properly evaluate the opinion of Dr. Todd that he should avoid stooping and erred in finding the plaintiff's statements inconsistent with the medical evidence and in failing to address the plaintiff's obesity. As we recommend the district court remand this case for further articulation based upon the failure of the ALJ to evaluate the prior administrative findings, we do not reach the merits of these arguments.

III.    **Discussion**

    A.    **Substantial Evidence Review – the Role of this Court**

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205,

at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); <u>Burton v. Schweiker</u>, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); <u>see also</u> <u>Wright v. Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); <u>Ficca</u>, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford</u>, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

22

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id</u>. at 120; <u>see Jones v. Barnhart</u>, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B.    <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful

activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).  To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.  42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.  20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e),  404.1545(a)(1),  416.920(e),  416.945(a)(1).    In  making  this

24

assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller, 962 F.Supp.2d at 778–79 (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize

26

the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113; see also Metzger v. Berryhill, 2017 WL 1483328, at *5; Rathbun v. Berryhill, 2018 WL 1514383, at *6.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

It is against these legal benchmarks that we assess the instant appeal.

## C.    This Case Will Be Remanded for Further Articulation.

As we have noted, it is axiomatic that an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. Furthermore, the ALJ must also "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck, 181 F.3d at 433. In the instant case, we conclude that the ALJ's RFC determination

28

is not supported by an adequate explanation and recommend this case be remanded for further proceedings.

In the instant case, the ALJ limited Lesh to a range of light work with some postural and environmental limitations. In making this determination, the ALJ stated that he considered the medical opinion evidence and the evidence of record but there is no mention in this ALJ's decision of the prior administrative finding which limited Lesh to sedentary work. Indeed, as we have mentioned, in a prior unfavorable decision, another ALJ found that, during the same period, Lesh was limited to sedentary work in occupations which can be performed with the use of a cane for ambulation. But here, the ALJ failed to articulate how Lesh was now able to perform a range of light work, considering the same severe impairments and medical evidence. Although nothing in the regulations gives a preclusive effect to a prior RFC determination when an ALJ is reviewing a case *de novo*, this prior administrative record is, at least, relevant evidence which must be evaluated as part of the longitudinal record. Therefore, we believe that the failure of the ALJ to even acknowledge this prior inconsistent finding was error and warrants remand.

We considered a similar issue in Depalma v. Kajikazi, No. 1:22-CV-475, 2023 WL 2870711 (M.D. Pa. Apr. 10, 2023), where an ALJ determined the plaintiff was capable of light work just one day after a prior ALJ had limited the plaintiff to

sedentary work. In <u>Depalma</u> we cited other cases which had relied upon the Fourth Circuit's holding in <u>Albright v. Comm'r of Soc. Sec.</u>, 174 F.3d 473 (4th Cir. 1999), that a prior, more restrictive, administrative finding encompassing a disability period immediately prior to the one at issue, while not binding, is "an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence," where an ALJ does not cite to evidence of improvement in the plaintiff's conditions. <u>Id.</u> at 477-78. <u>See</u> <u>Soltishick v. Berryhill</u>, 2018 WL 6839674, at *9 (M.D. Pa. Dec. 31, 2018) (Brann, J); <u>Butler v. Colvin</u>, 2016 WL 2756268, at *17 (M.D. Pa. May 12, 2016) (Conaboy, J).

Here, the Commissioner argues that the Appeals Council's order vacating and remanding the August 8, 2018, decision required the ALJ in the most recent decision to review the case *de novo*, and that the ALJ was not bound by the RFC findings in the previous decision. The Commissioner distinguishes our holding in <u>Depalma</u>, noting that the decision in <u>Depalma</u> was "administratively final," since it was based on a new disability application filed the day after the previous denial and the instant case is an ongoing appeal of the initial disability application. Further, according to the Commissioner, our reasoning in <u>Depalma</u> was rejected by the Third Circuit in <u>Mattei v. Comm'r Soc. Sec.</u>, No. 22-2721, 2023 WL 3479567 (3d Cir. May 16, 2023). Although we agree that the ALJ was not bound by these prior decisions, since

Mattei concluded that, "nothing in the regulations compels adoption or even consideration of a prior-found fact by an ALJ who decided a temporally distinct disability claim," 2023 WL 3479567, at *1, our view in this case, as in Depalma, is that, where an ALJ crafts a less restrictive RFC which encompasses the same, or immediately subsequent, time period and is based upon virtually the same evidence, a degree of articulation that was not present here is necessary to demonstrate upon which evidence this less restrictive RFC was based.

In fact, in Mattei, the Third Circuit was careful to note that its decision was not contrary to Albright, the decision upon which Depalma and the other supporting cases relied. The Third Circuit explained:

> The Fourth Circuit's decision in Albright is not to the contrary. At most, Albright requires an ALJ deciding a subsequent disability claim to consider and give "weight" to prior administrative findings regarding a claimant's disability status. Even so, Albright agreed that applying preclusion principles to subsequent claims involving unadjudicated time periods is "by its nature inconsistent with the agency's time-tested approach" of not doing so. Thus, the Fourth Circuit's rule regarding prior administrative findings is merely an application of the "substantial evidence rule," not, as Mattei would have it, some novel form of preclusion.

Mattei v. Comm'r Soc. Sec., No. 22-2721, 2023 WL 3479567, at *2 (3d Cir. May 16, 2023). Thus, our holding in Depalma was not rejected by Mattei, since the Third Circuit acknowledged that, while there is no strict preclusion principal binding an

31

ALJ to previous administrative decisions, under the substantial evidence standard which we apply in these cases, the ALJ must explain how these prior decisions were considered and the reasons behind the decision to diverge from them.

Moreover, similarly to <u>Depalma</u>, but distinct from the instant case, <u>Mattei</u> related to an immediately prior disability period. In <u>Mattei</u>, an ALJ found the claimant capable of performing light work between April 26, 2019, and December 31, 2019, while, on a previous claim, an ALJ had found him capable of performing only sedentary work between February 9, 2016, and April 25, 2019. 2023 WL 3479567 at *1. The Third Circuit rejected the claimant's argument as to the preclusive effect of the prior administrative decision finding him capable of sedentary work, but acknowledged that, while neither existing caselaw nor the regulations support "some novel form of preclusion," its holding was not inconsistent with the Fourth Circuit's decision in <u>Albright</u> which, "requires an ALJ deciding a subsequent disability claim to consider and give 'weight' to prior administrative findings regarding a claimant's disability status." <u>Id.</u> at *2. In fact, in <u>Mattei</u>, the ALJ had given weight to the prior ALJ decision, finding it "partially persuasive." <u>Id.</u> Thus, under <u>Albright</u> and <u>Mattei</u>, the consideration of a prior administrative decision is required under the substantial evidence standard, even in a case involving a subsequent disability period. We find this proposition even more

relevant here, where an ALJ initially determined that the claimant was limited to sedentary work in occupations allowing for the use of an ambulatory device, but subsequently, and inexplicably, found to be able to perform light work during the same time period.

We acknowledge that, in our reading of the administrative record, we could speculate the reasons why a subsequent ALJ found the original RFC limiting Lesh to sedentary work was too restrictive. For example, it may be that the more truncated period of claimed disability changed the frame of reference, considering the medical opinion evidence which tended to show Lesh's condition would improve over time, or that the additional testimony of Dr. Todd finding that Lesh was capable of light work and did not need the use of an assistive device was better supported by the longitudinal evidence than the opinions upon which the ALJ previously relied. Unfortunately, the most recent decision by the ALJ that Lesh was capable of light work during a period that was encompassed by the previous decision limiting him to sedentary work was simply not explained. And we cannot, in a speculative fashion, insert a rationale where one does not exist.

Since the latest unfavorable opinion is silent about the previous, inconsistent, administrative record, in our view, more is needed to meet the articulation standard required by the Act.  Since the ALJ's burden of articulation is not met in the instant

case, we recommend the district court remand this case for further consideration by the Commissioner. Yet, while we reach this result, we note that nothing in this Report and Recommendation should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

## IV.    <u>Recommendation</u>

For the foregoing reasons, IT IS RECOMMENDED that the decision of the Commissioner in this case should be REMANDED for further consideration.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall

witnesses, or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of August 2024.

<u>*S/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge